IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE

HUNTER K. LUNDGREN,
     Plaintiff,

v.

JOSHUA HAMLETT
JAMES ZAHN
COLONEL MATT PERRY
CAPTAIN CHRISTY WALLACE
RALPH BELLO
WILLIAM "CHIP" KAIN
STATE OF TENNESSEE
     Defendants.

Docket No._____
JURY DEMAND

---

## COMPLAINT

---

Plaintiff, Hunter K. Lundgren, by and through counsel, brings action against Defendants for violations of Plaintiff's civil rights guaranteed by the United States Constitution and Tennessee law. In support of this Complaint, Plaintiff states as follows:

### JURISDICTION AND VENUE

1. The Court has jurisdiction under 28 U.S.C. §1331 and 28 U.S.C. §1343(a)(3) because the controversy arises under the U.S. Constitution and 42 U.S.C. §1983.

2. This Court also has supplemental jurisdiction over claims asserted against Defendants under Tennessee State law pursuant to 28 U.S.C. §1367.

3. Venue is proper in the Middle District of Tennessee under 28 U.S.C. §1391(b)(2) because a substantial portion of the events giving rise to this action occurred within this District.

4. Plaintiff brings this lawsuit to redress Defendants' violations of Plaintiff's constitutional rights under the Fourth and Fourteenth Amendments of the United States Constitution and his civil rights pursuant to 42 U.S.C. §1983, as well as violations of state law.

5.     Plaintiff also seeks monetary damages (special, compensatory, and punitive), as well as an award of costs and attorneys' fees, and such other and further relief as the Court deems just and proper.

PARTIES

6.     Plaintiff, Hunter K. Lundgren, is a citizen of the United States, a resident of Coffee County, Tennessee, and U.S. Navy veteran.

7.     Defendant Joshua Hamlett ("Hamlett") is and/or was at the time of the incident complained of herein, an officer with the THP (hereinafter "THP"). Hamlett is sued in his individual capacity for misconduct occurring under color of state law.

8.     Defendant James Zahn ("Zahn") is and/or was at the time of the incident complained of herein, an officer with the THP. Zahn is sued in his individual capacity for misconduct occurring under color of state law.

9.     Defendant State of Tennessee is a governmental entity.

10.     Colonel Matt Perry ("Perry") is and/or was at the time of the incident complained of herein, an officer with the THP in charge of administering the THP.

11.     Captain Christy Wallace ("Wallace") is and/or was at the time of the incident complained of herein, an officer with the THP in charge of overseeing and the supervising officers of the THP, including Zahn and Hamlett, and overseeing the Tennessee Department of Safety Training Center. Wallace is sued in her individual capacity for misconduct occurring under color of state law.

12.     Ralph Bello ("Bello") is and/or was at the time of the incident complained of herein, the Director of the Tennessee Law Enforcement Training Academy (TLETA) and Executive Secretary, Tennessee Peace Officers Standards & Training Commission. In these roles Bello is/was responsible for overseeing the instructors, coursework, and training at TLETA as

2

well as making recommendations to regarding POST policy and training decisions for the development and enforcement of standards for law enforcement agencies statewide including law enforcement training instructors, curricula, and specialized schools. Bello is sued in his individual capacity for misconduct occurring under color of state law.

13.     William "Chip" Kain ("Kain") is and/or was at the time of the incident complained of herein, the Deputy Commissioner overseeing the Tennessee Law Enforcement Training Academy/Peace Officers Standards & Training (POST) Commission. Kain is sued in his individual capacity for misconduct occurring under color of state law.

**FACTS**

14.      On September 29, 2024, Plaintiff was driving in a northerly direction on Cox Road approaching Murfreesboro Road in Williamson County, Tennessee at approximately 8:30 p.m. with light rain or misty conditions.

15.     Plaintiff would show that the area in the vicinity of the intersection Cox Road and Murfreesboro Road is a rural, mostly residential area without any streetlights and was dark at 8:30 p.m. on September 29, 2024.

16.     The driving conditions which Plaintiff encountered on September 29, 2024, are depicted by the dash cam footage from one of the responding officers approaching the intersection with Murfreesboro Road from Cox Road – the direction Plaintiff was traveling - showing complete darkness except for the vehicle headlights.

3



17.     Plaintiff, who lived in Tullahoma, advised the investigating officers and emergency personnel that he was unfamiliar with Cox Road and had not regularly driven that route, especially after dark.

18.     Plaintiff would show that there was no visible signage posted on Cox Road approaching the intersection with Murfreesboro Road indicating that Cox Road ended in a T-intersection nor was there a two-directional sign opposite Cox Road or a guardrail at the T-intersection as depicted in the photograph below.



4

19.    Plaintiff would show that prior to the roadway improvements there had been a guardrail at the T-intersection, but a guardrail had not been re-installed. Below is a Google Maps photo dated April 2023 which depicts the existence of the guardrail.



20.    Plaintiff, not realizing that Cox Road dead-ended into Murfreesboro Road in a T-intersection and the absence of any posted warning signs, continued traveling straight through the green traffic light, hitting a ditch and coming to a stop in a field as depicted in the photograph referred to in Paragraph 18 above.

21.    Plaintiff's crash was a single-vehicle crash.

22.    Plaintiff would show that his vehicle sustained disabling damage including front airbag deployment due to the severity of the crash.

23.    Emergency personnel responded to the scene of Plaintiff's crash.

24.    Plaintiff would show that Hamlett and Zhan were among the officers and emergency personnel who responded to the crash scene.

25.    Plaintiff sustained personal injuries which required emergency medical treatment on the scene, including visible injuries to his head.

5

26.     The emergency personnel at the scene, including Zahn, can be heard on body cam footage discussing the absence of the guardrail at the T-intersection of Cox Road and Murfreesboro Road with Zahn commenting that the guardrail was not reinstalled because it was tiresome to replace after so many people had run through it.

27.     At all times Plaintiff maintained respectful interactions with law enforcement and emergency personnel at the scene posing no safety concerns to those present.

28.     Plaintiff repeatedly, but respectfully, advised Hamlett and Zahn that he was not driving impaired but that his severe crash was due to being unfamiliar with the area, especially at night without streetlights.

29.     EMS professionals who treated Plaintiff at the crash site for his visible head injuries did not verbalize to any those officers responding to the scene they saw signs of Plaintiff being intoxicated or otherwise under the influence of any substance.

30.     Sheriff's deputy responding to the scene expressed that he did not find any alcohol containers or drug paraphernalia nor did Plaintiff "smell" like anything.

31.     The nature of the crash and the path that Plaintiff's vehicle took - a straight line through a green traffic light - as shown on the traffic report did not suggest impaired driving.

32.     It is medically recognized that a driver's natural "fight or flight" response from the shock and excitement of being involved in a traffic accident can cause physical and mental reactions that may mimic alcohol or drug impairment.

33.     Plaintiff avers that that he repeatedly requested that he be given a breathalyzer because he knew he was not driving under the influence but was advised that breathalyzer tests were not administered in Tennessee.

34.     Hamlett and Zhan wrongfully detained Plaintiff for a DUI investigation.

35. Plaintiff avers that, based upon the totality of the circumstances, Plaintiff was unlawfully detained as no reasonable officer would continue to further detain Plaintiff after receiving (a) Plaintiff's explanation of why and how the crash occurred; (b) Plaintiff's obvious and visible injuries to his head requiring professional medical treatment by EMS; (c) EMS not expressing that they saw signs of Plaintiff being intoxicated or otherwise impaired; and (d) local law enforcement finding no alcohol containers or drug paraphernalia on the scene or smelling anything on Plaintiff to suggest drug or alcohol consumption.

36. A reasonable officer would have determined that Plaintiff was not impaired, but was instead suffering from shock and a significant blow to his head particularly when officers knew that this intersection had been the site of frequent accidents which had occurred in the same manner as Plaintiff's crash.

37. Plaintiff avers that Hamlett and Zahn lacked probable cause to continue to detain him at the crash site for a DUI investigation.

38. At all times Hamlett and Zahn were exercising their authority under color of law as law enforcement such that Plaintiff would not believe that he would be free to leave.

39. Hamlett and Zahn improperly extended their response at the scene to force Plaintiff to submit to field sobriety tests by intentionally or recklessly disregarding EMS statements that Plaintiff had struck his head causing an obvious head injury and the lack of any indication that they suspected Plaintiff being intoxicated or under the influence, and refusing to take into account that Plaintiff suffered from shock and/or his significant head injuries might affect his balance or coordination.

40. Plaintiff, despite his injuries, willingly complied with the field sobriety tests because he knew, and had repeatedly verbalized to Hamlett and Zahn, that he had not consumed

7

any alcohol, any intoxicants, and did not take any prescription medications prior his accident which would have impaired his ability to safely operate his vehicle.

41.     Hamlett and Zahn conducted field sobriety tests to evaluate Plaintiff which consisted of: (1) a Horizontal Gaze Nystagmus Test; (2) a Walk and Turn Test and (3) a Straight Leg Raise test despite Plaintiff receiving medical treatment for head injuries at the scene of a severe crash.

42.     Plaintiff asserts that he successfully completed all of these field sobriety tests without any difficulty following Hamlett and Zahn's instructions.

43.     These officers went off-mission from keeping the roads safe by continuing to prolong Plaintiff's detention following the successful completion of the field sobriety tests.

44.     Hamlett and Zahn placed Plaintiff under arrest and charged Plaintiff with driving under the influence despite successfully completing the field sobriety tests.

45.     Plaintiff was completely confused when he was instructed to turn around during the field sobriety tests – which he did – and the officer took hold of his wrist and Plaintiff can be heard on body cam footage asking "what is going on?" expressing his complete lack of understanding why he was being handcuffed.

46.     In response to Plaintiff asking why he was being arrested after having successfully completed the field sobriety tests, Plaintiff was only informed that he drove through an intersection where there was no road so "you know how it looks" despite these officers' personal knowledge that the crash location had frequent accidents which occurred in the same manner as Plaintiff's crash.

47.     To lawfully arrest Plaintiff, Hamlett and Zahn must have probable cause of criminal activity.

48.     Probable cause exists where "the facts and circumstances within the officer's knowledge [ ] are sufficient to warrant a prudent person .. .in believing . . . that the suspect committed, is committing, or is about to commit an offense." Barrera v. City of Mount Pleasant, 12 F.4th 617, 620 (6th Cir. 2021) (quoting Michigan v. Defillippo 443 U.S. 31, 37 (1979)).

49.     The undisputed facts will show that Plaintiff was involved in a single-car accident on a dark, unlit road causing him severe head injuries.

50.     Plaintiff complied and passed the field sobriety tests administered by Hamlett and Zahn.

51.     Despite the completion of these tests and their knowledge that this dangerous intersection had caused wrecks similar to Plaintiff's, Plaintiff was arrested for driving under the influence in violation of *Tennessee Code Annotated* §55-10-401 and his Fourth Amendment rights.

52.     Plaintiff would show that body cam footage shows the officers obtaining the implied consent form to notify Plaintiff that he was being charged with DUI prior to even administering the first field sobriety test.

53.     Additionally, Plaintiff would show that as soon as the Zahn arrived on the scene – even before laying eyes on Plaintiff - he had decided that he was going to arrest Plaintiff for DUI based upon body cam footage in which Zahn can be heard commenting that he "would bet money" Plaintiff was under the influence despite Zahn's intentionally attempt to interfere with the audio; the response of a local sheriff's deputy that "he [Plaintiff] seems pretty energetic;" additional discussions between Zahn and the sheriff's deputy was inquiring what Zahn thought Plaintiff was "on" and if he thought it was "marijuana mixed with something?" to which Zahn replied that "he [Plaintiff] is doing something" . . . "I'm guessing he was on cocaine or some upper."

9

54.     Additionally, Zahn can be heard on body cam footage telling Hamlett "as soon as he [Plaintiff] gets out of the ambulance we are going to do field sobriety tests" again without either officer having seen or spoken with Plaintiff or any of the emergency personnel on the scene, including EMTs.

55.     During all times during this police/citizen encounter the Plaintiff was respectful, restrained, courteous, and compliant posing no safety threat.

56.     At no time did either Hamlett and Zahn observe, or claim to have observed, Plaintiff engaging in any conduct which would cause a reasonable law enforcement officer to suspect Plaintiff was driving under the influence of alcohol or any intoxicant, or otherwise engaging in unlawful behavior.

57.     Plaintiff was placed in the back of the patrol car visibly upset and handcuffed.

58.     Hamlett or Zahn did not mirandize Plaintiff prior to transporting him to the hospital for a blood test.

59.     Plaintiff had visible injuries from the handcuffs once they were removed at hospital.

60.     Plaintiff asked Hamlett and Zahn at the hospital if he needed to sign a form acknowledging his Miranda rights.

61.     At the time of his arrest, Plaintiff had neither committed a crime nor violated any other statute or regulation.

62.     Hamlett and Zahn lacked probable cause to arrest Plaintiff and did not have a warrant to obtain Plaintiff's blood.

63.     The undisputed fact is that Plaintiff was, in fact, sober as established by the blood test subsequently administered without a search warrant or sufficient probable cause and as he continually represented to Hamlett and Zahn.

10

64.     Plaintiff affirmatively states that he had no prior criminal record on September 29, 2024.

65.     Hamlett and Zahn had no valid legal basis to arrest Plaintiff.

66.     Plaintiff incorporates all of the allegations and facts in Paragraphs 6 through 65 above without restating the same *verbatim* as additional supporting facts in each of the following Paragraphs and causes of action.

## DEPRIVATION OF FEDERAL RIGHTS UNDER 42 U.S.C. §1983

All of the relevant acts of Defendants were carried out under the color of state law either in their individual capacities and, in the instances where injunctive, prospective, and ancillary relief is requested and can be awarded, in their official capacity as agents of the State of Tennessee as distinguished by the U.S. Supreme Court in <u>Will v. Mich. Dep't of State Police</u>, 491 U.S. 58.

These acts deprived Plaintiff of the rights, privileges and immunities guaranteed to citizens of the United States by the Fourth and Fifth Amendments as incorporated against the States by the Fourteenth Amendment to the Constitution and in violation of 42 U.S.C. §1983.

## FIRST COUNT
### Unlawful Seizure

67.     Hamlett and Zahn violated Plaintiff's rights by unlawfully detaining Plaintiff and requiring Plaintiff to perform field sobriety tests without reasonable suspicion or probable cause to believe that Plaintiff was driving under the influence.

68.     No reasonable person would have thought that they were free to leave.

69.     The seizure of Plaintiff for driving under the influence was unreasonable because Hamlett and Zahn lacked probable cause to detain Plaintiff based upon the totality of the circumstances: (a) EMTs treated Plaintiff for head injuries; (b) EMTs did not express any

concerns to law enforcement that they observed any signs that Plaintiff may be under the influence of drugs or alcohol; (c) deputies on the scene did not locate alcohol containers or drug paraphernalia; (d) Plaintiff did not "smell" like anything; (e) Plaintiff did not exhibit any of the common signs of intoxication – impaired/slurred speech, stumbling, aggressive or overly friendliness, drowsiness or loss of consciousness, difficulty concentrating, flushed face, or vomiting; additionally Plaintiff successfully communicated with professionals at the scene in a logical, coherent manner and was consistent and honest in his description of the events leading up the accident despite verbalizing his embarrassment and remorse.

70.     The illegal seizure of Plaintiff's person by Hamlett and Zahn to force Plaintiff to submit to field sobriety tests was done without probable cause depriving Plaintiff of his civil rights to be free from unlawful seizures under the Fourth and Fourteenth Amendments.

71.     Following the successful completion of the field sobriety tests, Plaintiff was seized and wrongfully arrested without probable cause for driving under the influence.

72.     Plaintiff was placed in the patrol car and taken to the hospital where Plaintiff was forced to submit to submit to a blood alcohol test.

73.     Plaintiff tested negative for all substances tested proving his representation to Hamlett and Zahn to be true that Plaintiff's crash was simply an accident and not due to impaired driving.

74.     Plaintiff, who had not been advised of his Miranda rights, asked about those rights at the hospital and remained under the impression he would be free to leave once his negative blood tests were presented to Hamlett and Zahn.

75.     Sadly, this was not the case, Plaintiff was arrested and charged with DUI.

76.     Plaintiff suffered damages associated with his arrest including but not limited to lost wages, legal fees, and towing expenses.

12

77. The Defendants acted intentionally, maliciously, or with callous disregard for Plaintiff's rights.

78. As a direct and proximate result of the acts and omissions of Hamlett and Zahn, Plaintiff suffered a violation of his constitutional rights, harm to his reputation and standing in the community, mental distress, shame, humiliation, and embarrassment, and was therefore damaged in an amount to be determined by a jury.

SECOND COUNT
False Arrest And Illegal Search

79. Hamlett and Zahn violated the Plaintiff's rights by placing him under arrest without probable cause to believe that he was driving under the influence following the successful completion of the three (3) field sobriety tests.

80. A reasonable officer would have determined that there was no probable cause to arrest Plaintiff for driving under the influence under the totality of the circumstances.

81. Hamlett and Zahn subsequently placing Plaintiff under arrest for driving under the influence was not for any lawful purpose, lacked probable cause, and not based on the totality of the circumstances.

82. These actions were a physical restraint, a show of authority under color of law, and a show of force.

83. The false arrest of Plaintiff was a deprivation of his civil rights to be free from arrest without necessary probable cause under the Fourth Amendment.

84. Based upon the arrest made without sufficient probable cause, Hamlett and Zahn undertook a warrantless search of Plaintiff's person without probable cause or consent by forcing Plaintiff to submit to a blood test.

13

85. Plaintiff would show that contrary to the statements made by Defendants to Plaintiff that Tennessee does do breathalyzer tests, *Tennessee Code Annotated* §55-10-406 specifically provides for the use of breathalyzer tests and sets out specific circumstances for requiring blood or oral fluid tests.

86. Plaintiff avers that among the circumstances specified in the statute allowing for a blood test is the driver's consent.

87. Plaintiff would show that Zahn and Hamlett obtained Plaintiff's "consent" by coercion and duress.

88. Plaintiff was advised that he had no other option but to submit to a blood test and was put in a position where he had no choice but to submit to the test to prove his innocence -in direct opposition to the "innocent until proven guilty" standard.

89. The illegal search of Plaintiff's person was a deprivation of his civil rights to be free from unlawful searches under the Fourth Amendment.

90. A reasonably well-trained officer would know that there were no specific or articulable facts to justify arresting Plaintiff for DUI under the totality of the circumstances.

91. A reasonable person in Plaintiff's position would not have felt free to leave.

92. Plaintiff, nor any reasonable person, would have felt free to refuse the blood test based upon the pressure from Zahn and Hamlett and the misleading information being provided to him.

93. With respect to this show of authority by Hamlett and Zahn, Plaintiff submitted without protest and presented no safety threat to them.

94. The seizure was made without probable cause and without legal process.

95. Plaintiff was transported to provide a blood sample without a warrant or probable cause and based upon "consent" which was coerced and made under duress.

14

96.     The collection and analysis of a blood sample is a "search" within the meaning of the Fourth Amendment. See <u>Skinner v. Ry. Labor Execs. Ass'n</u>, 489 U.S. 602, 618 (1989).

97.     A search is unlawful if it is made without probable cause.

98.     Hamlett and Zahn, without reasonable suspicion or probable cause, intimidated the Plaintiff into providing a blood sample by advising him that there was no alternative and allowing Plaintiff to believe that he would be free to go once the test confirmed his sobriety.

99.     As a result of these actions, Plaintiff suffered actual monetary damages as well as emotional distress, emotional upset, embarrassment, and damage to his reputation.

100.    Hamlett and Zahn were the cause in fact and proximate cause of Plaintiff's damages.

101.    Hamlett and Zahn acted intentionally, maliciously, or with callous disregard for Plaintiff's rights.

THIRD COUNT
State Law Claims of False Imprisonment

102.    Hamlett and Zahn falsely imprisoned Plaintiff and violated his rights by seizing his person and depriving him of his liberty without probably cause to believe that he had committed a crime, namely driving under the influence.

103.     The false imprisonment was a deprivation of Plaintiff's liberty without the requisite due process of law as defined under the Fourteenth Amendment and in violation of Tennessee State law.

104.    As a direct and proximate result of the ats and omissions of Hamlett and Zahn, Plaintiff suffered a seizure of his person, a violation of his constitutional rights, harm to his reputation and standing in the community, mental distress, shame, humiliation, and embarrassment, and was therefore damaged in an amount to be determined by a jury.

15

## FOURTH COUNT
## Monell Claim

105.     On information and belief, the THP has developed a custom and culture of violating the constitutional rights of others.

106.     Upon information and belief, the THP has a formal policy that troopers are not considered to have successfully completed probationary training until they have made a DUI arrest.

107.     THP further rewards and recognizes officers based upon the number of DUI arrests made.

108.     THP receives financial gain based upon the number of DUI arrests from fees, seizures, and forfeitures, as well as contributions from organizations such as M.A.D.D.

109.     Monetary remuneration is a driving motivation behind the policy.

110.     Even if not reduced to a written policy, this custom is so widespread as to have the force of law.

111.      The THP has a history of wrongfully tolerating, condoning, and encouraging constitutional violations.

112.     THP has actual knowledge that its officers, including Zahn, have made multiple arrests for DUI when in fact the drivers were completely sober and not under the influence of any intoxicants.

113.     Zahn and the THP as a whole have arrested numerous sober persons, including a former U.S. Attorney; a NASA employee; and a driver on the Autism spectrum.

114.     As a result, it has become the custom and culture of the THP to protect its officers when officers are known to have violated the constitutional rights of others.

16

115.    The THP, specifically Perry and Wallace have failed to properly supervise officers during the probationary field training period on reasonable suspicion resulting in numerous wrongful arrests and violations of the constitutional rights of the citizens.

116.    The THP, specifically Perry and Wallace have failed willfully ignored the lack of training of officers during the probationary field training period on reasonable suspicion resulting in numerous wrongful arrests and violations of the constitutional rights of the citizens.

117.    Plaintiff would show that training provided to obtain P.O.S.T. certification is a minimum requirement and the THP has a formal written policy which requires additional field training in which probationary employees work alongside Field Training Trooper who provide on-the-job training.

118.    The THP has actual knowledge of which of its officers are making arrests based on charges of DUI and the drivers are later determined to be completely sober.

119.    Plaintiff avers that the THP internally tracks these statistics.

120.    Upon information and belief, Plaintiff avers that the THP also has access to additional statistics regarding the disposition of arrests made for driving under the influence, including blood test results, through third-party court monitoring programs.

121.    Plaintiff avers that by the THP, Perry, and Wallace, continuing to allow officers who they have actual knowledge have made improper arrests to train, supervise, and/or serve as Field Training Troopers to other officers, especially officers who are inexperienced or considered probationary, on how to conduct accident investigations and field sobriety tests, demonstrates a deliberate indifference which perpetuates additional wrongful arrests, constitutional violations, and improperly charging citizens with criminal offenses they did not commit.

17

122. The THP, Perry, and Wallace, have failed to properly supervise officers who are responsible for training and/or supervising officers during the probationary period after completing P.O.S.T. certification on reasonable suspicion resulting in numerous wrongful arrests and violations of the constitutional rights of the citizens.

123. The THP, Perry, and Wallace have failed to properly discipline officers who make arrests on charges of DUI who tests conclusively demonstrate no violations of Tennessee DUI laws have occurred resulting in violations of the constitutional rights of the citizens of Tennessee occur.

124. Upon information and belief, the THP, Perry, and Wallace have acted with deliberate indifference to a pattern of past occurrences of constitutional violations of citizens of which they had actual knowledge such that officers and deputies feel empowered to violate the constitutional rights of U.S. citizens with impunity.

125. Plaintiff avers that the pattern of indifference by the THP, Perry, and Wallace has become so egregious that Tennessee Legislature has adopted *Tennessee Code Annotated* §55-10-428 establishing an advisory task force for the purpose of reviewing the impaired driving and submit annual reports regarding its findings and recommendations.

126. Plaintiff further avers that the pattern of indifference THP, Perry and Wallace, has become so egregious that Tennessee Legislature has also adopted *Tennessee Code Annotated* §55-10-429 requiring annual reports to increase transparency on the number or wrongful DUI arrests and the agencies responsible.

127. The THP, Wallace, Bello, and Kain, failed to properly train officers on investigating the offense of Driving Under the Influence.

18

128.     The THP, Wallace, Bello, and Kain, failed to properly train officers on the proper means for evaluating whether a citizen is driving while under the influence of a drug or intoxicant.

129.     Plaintiff would further show that the THP has fired at least two officers for what was characterized as a "failure to properly investigate" when those officers determined that field sobriety tests were not necessary which was contrary to the policy, practice, and custom created within the THP which encourages and rewards DUI arrests.

FIFTH COUNT

Tennessee State Law Claims for Assault, Battery and Negligence

130.     Plaintiff asserts violations of Tennessee state law by Defendants under *Tennessee Code Annotated* §39-13-101, et seq. (assault and battery) and *Tennessee Code Annotated* §39-11-620 (requiring the use of reasonable force in effecting a lawful arrest).

131.     The acts or omissions of the Defendants requiring a blood draw without probable cause that Plaintiff was driving impaired deprived Plaintiff of his rights under Tennessee state law and caused him the injuries and damages described herein.

132.     The acts or omissions of the Defendants requiring a blood draw without probable cause that Plaintiff was driving impaired deprived Plaintiff of his rights under Tennessee state law to be free from an unreasonable use of force and caused him the injuries and damages described herein.

133.     Plaintiff further avers that coercing his "consent" to a blood draw while under duress invalidates the consent and results in an excessive use of force and/or assault and battery upon the Plaintiff.

19

## SIXTH COUNT
## REQUEST FOR INJUNCTIVE RELIEF

134.    Plaintiff avers that he is entitled to prospective and injunctive relief to avoid future violations of this Constitutional Rights by these Defendants.

135.    Plaintiff avers that, like all able-bodied residents of Tennessee, he is required by necessity due to the lack of a state-wide mass transit system to operate a motor vehicle on State highways and roadways which will be patrolled by the THP, including Cox Road and Murfreesboro Road where the events forming the basis of this Complaint occurred.

136.    Plaintiff further avers that Middle Tennessee, where the events complained of herein occurred, is home to some of the fastest growing cities in Tennessee – including Nashville, Lebanon, and Nolensville – resulting in an increased number of residents who will not be familiar with the roads leading to potential traffic violations.

137.    Plaintiff avers that the State of Tennessee should be required to evaluate the current road signage warning drivers of dangerous conditions such as the T-intersection at Cox Road and Murfreesboro Road, and to install additional warning signs and directional signs to prevent future accidents.

138.    Plaintiff avers that the State of Tennessee not only uses breathalyzer tests, contrary to the information conveyed to Plaintiff, but has adopted the use of breathalyzers known as interlock devices to help deter incidents of drivers committing repeat offenses for DUI following a conviction.

139.    Plaintiff avers that requiring all of the Defendants to revise exiting policies or adopt new policies, including training curriculum and procedures, for officers on the use of breathalyzers, and requiring the use of breathalyzers as provided in *T.C.A.* §55-10-406, when reasonable suspicion exists that a driver may be operating a vehicle while impaired will reduce if

20

not prevent the likelihood of Plaintiff and other persons operating motor vehicles on the roadways within Tennessee from having their Constitutional rights violated.

140.    Plaintiff avers that the Defendants, individually and collectively, will continue to violate the Constitutional Rights of the citizens by wrongfully arresting sober drivers on charges of DUI without probable cause absent injunctive relief.

141.    Plaintiff avers that the Defendants, individually and collectively, will continue to perpetuate the violations of the Constitutional Rights of the citizens absent prospective relief requiring THP officers to be properly trained on the legal requirements of reasonable suspicion.

142.    Plaintiff avers that the Defendants, individually and collectively, will continue to perpetuate the violations of the Constitutional Rights of the citizens absent prospective relief requiring THP officers to be properly trained on the legal requirements of probable cause.

143.    Plaintiff avers that the Defendants, individually and collectively, will continue to perpetuate the violations of the Constitutional Rights of the citizens absent prospective relief requiring THP officers to be properly trained on conducting field sobriety tests and evaluating the results to avoid improper arrests of sober drivers.

144.    Plaintiff avers that the Defendants, individually and collectively, will continue to perpetuate the violations of the Constitutional Rights of the citizens absent prospective relief requiring THP officers revise existing policies or to adopt new policies which eliminate incentives for officers based upon the number of arrests made on charges of DUI, including discipling and/or terminating officers who decline to conduct field sobriety tests following motor vehicle accidents.

145.    Plaintiff avers that the Defendants Wallace, Bello, and Kain will continue to perpetuate the violations of the Constitutional Rights of the citizens of Tennessee absent prospective relief requiring Tennessee Law Enforcement Training Academy (TLETA) and

21

Tennessee Peace Officers Standards & Training Commission (POST) to revise existing training curriculum or to adopt new training and proficiency measures to ensure that officers are knowledgeable of the legal requirements to establish reasonable suspicion.

146.     Plaintiff avers that the Defendants Wallace, Bello and Kain will continue to perpetuate the violations of the Constitutional Rights of the citizens of Tennessee absent prospective relief requiring Tennessee Law Enforcement Training Academy (TLETA) and Tennessee Peace Officers Standards & Training Commission (POST) to revise existing training curriculum or to adopt new training and proficiency measures to ensure that officers are knowledgeable of the legal requirements to establish probable cause to conduct field sobriety tests.

147.     Plaintiff avers that the Defendants Wallace, Bello and Kain will continue to perpetuate the violations of the Constitutional Rights of the citizens of Tennessee absent prospective relief requiring Tennessee Law Enforcement Training Academy (TLETA) and Tennessee Peace Officers Standards & Training Commission (POST) to revise existing training curriculum or to adopt new training and proficiency measures to ensure that officers are knowledgeable of how to conduct field sobriety tests.

148.     Plaintiff avers that the Defendants Wallace, Bello and Kain will continue to perpetuate the violations of the Constitutional Rights of the citizens of Tennessee absent prospective relief requiring Tennessee Law Enforcement Training Academy (TLETA) and Tennessee Peace Officers Standards & Training Commission (POST) to revise existing training curriculum or to adopt new training and proficiency measures to ensure that officers are knowledgeable of how to evaluate the results of properly conducted field sobriety tests to avoid wrongful arrests of sober drivers.

22

149.     Plaintiff avers that Defendants Wallace, Bello and Kain will continue to perpetuate the violations of the Constitutional Rights of the citizens of Tennessee absent prospective relief requiring Tennessee Law Enforcement Training Academy (TLETA) and Tennessee Peace Officers Standards & Training Commission (POST) to revise existing training curriculum or to adopt new training and proficiency measures to ensure that officers are knowledgeable of how to evaluate the results of field sobriety tests.

## DAMAGES

150.     Defendants are liable to the Plaintiff, jointly and severally, for all wrongful acts which harmed and caused damage to him.

151.     Defendants are liable to the Plaintiff for damages for violations of his civil rights under the Constitution of the United States as defined by 42 U.S.C. §1983.

152.     Based on the facts and circumstances described in this Complaint, and as a direct result of the acts and omissions of the Defendants as described herein, Plaintiff has suffered damage to reputation; pain and suffering; past, present, and future emotional distress; and other financial and economic losses.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests a trial by a JURY and that a judgment been entered against Defendants, jointly and severally, as follows:

1.     Compensatory damages of at least One Million Dollars ($1,000,000.00) or such other amount supported by the evidence at trial;

2.     Punitive damages in an amount to sufficiently deter Defendants from engaging in future behavior as described in this Complaint;

3.     Attorneys' fees and costs of suit as provided by 42 U.S.C. §1988;

4.     Prospective and Injunctive relief to prevent future violations of Plaintiff's

23

Constitutional civil rights and the rights of other citizens operating motor vehicles on Tennessee state roadways.

     5.      Pre- and post-judgment interest at the legal rate; and

     6.      Any and all other and further relief as the Court deems appropriate.

               Respectfully submitted,
               HUNTER K. LUNDGREEN, Plaintiff
               by his attorneys,

CHANCEY-KANAVOS

BY:    /s/ H. Franklin Chancey
        H. FRANKLIN CHANCEY, BPR #013187
        P.O. Box 42
        Cleveland, TN 37364
        (423) 479-9186
        franklin@cklplaw.com