IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE

HUNTER K. LUNDGREN,
     Plaintiff,

v.

JOSHUA HAMLETT, in his official and individual capacity,
JAMES ZAHN, in his official and individual capacity,
COLONEL MATT PERRY, in his official and individual capacity,
CAPTAIN CHRISTY WALLACE, in her official and individual capacity,
RALPH BELLO, in his official and individual capacity, and
WILLIAM "CHIP" KAIN, in his official and individual capacity,
     Defendants.

Docket No. 3:25-cv-01093
JURY DEMAND

---

## FIRST AMENDED COMPLAINT

---

Plaintiff, Hunter K. Lundgren, by and through counsel, brings action against Defendants for violations of Plaintiff's civil rights guaranteed by the United States Constitution and Tennessee law and for injunctive relief. In support of this Complaint, Plaintiff states as follows:

### JURISDICTION AND VENUE

1.    The Court has jurisdiction under 28 U.S.C. §1331 and 28 U.S.C. §1343(a)(3) because the controversy arises under the U.S. Constitution and 42 U.S.C. §1983.

2.    This Court also has supplemental jurisdiction over claims asserted against Defendants under Tennessee State law pursuant to 28 U.S.C. §1367.

3.    This Complaint seeks remedies pursuant to 42 U.S.C. §§1983 and 1988 alleging violations of the Fourth and Fourteenth Amendments to the Constitution of the United States of America as well as the laws of the State of Tennessee.

4.    Venue is proper in the Middle District of Tennessee under 28 U.S.C. §1391(b)(2) because a substantial portion of the events giving rise to this action occurred within this District.

1

5. Plaintiff brings this lawsuit to redress Defendants' violations of Plaintiff's constitutional rights under the Fourth and Fourteenth Amendments of the United States Constitution and his civil rights pursuant to 42 U.S.C. §1983, as well as violations of state law.

6. Plaintiff also seeks monetary damages (special, compensatory, and punitive), as well as an award of costs and attorneys' fees, and such other and further relief as the Court deems just and proper.

7. Plaintiff seeks injunctive relief to reform the custom, policy or practice within the Tennessee Highway Patrol incentivizing and/or ineffectively training its troopers for DUI arrests and/or the refusal to use objective tools such as breathalyzers causing sober drivers such as Plaintiff to be falsely arrested for DUI without sufficient probable cause.

PARTIES

8. Plaintiff, Hunter K. Lundgren, is a citizen of the United States, a resident of Coffee County, Tennessee, and U.S. Navy veteran.

9. Defendant Joshua Hamlett ("Hamlett") is and/or was at the time of the incident complained of herein, an officer employed with the Tennessee Highway Patrol on the day of the events giving rise to this action. Hamlett is sued in his official and individual capacity for misconduct occurring under color of state law.

10. Defendant James Zahn ("Zahn") is and/or was at the time of the incident complained of herein, an officer employed with the Tennessee Highway Patrol on the day of the events giving rights to this action. Zahn is sued in his official and individual capacity for misconduct occurring under color of state law.

11. Colonel Matt Perry ("Perry") is and/or was at the time of the incident complained of herein, an officer with the Tennessee Highway Patrol in charge of administering the policies for the Tennessee Highway Patrol and is believed to be a policy-maker for the Tennessee

2

Highway Patrol and/or responsible for trooper oversight. Perry, as the Colonel, is the head of the THP and assisted by three (3) Lieutenant Colonels. Perry is sued in his official and individual capacity for misconduct occurring under state law.

12.     Captain Christy Wallace ("Wallace") is and/or was at the time of the incident complained of herein, an officer with the Tennessee Highway Patrol in charge of overseeing and the supervising officers of the Tennessee Highway Patrol, including Zahn and Hamlett, and overseeing the Tennessee Department of Safety Training Center. Wallace is believed to be a policy-maker for the Tennessee Highway Patrol and/or responsible for trooper oversight and/or training. Wallace is sued in her official and individual capacity for misconduct occurring under color of state law.

13.     Ralph Bello ("Bello") is and/or was at the time of the incident complained of herein, the Director of the Tennessee Law Enforcement Training Academy (TLETA) and Executive Secretary, Tennessee Peace Officers Standards & Training Commission ("POST"). In these roles Bello is/was responsible for overseeing the instructors, coursework, and training at TLETA as well as making recommendations regarding POST policy and training decisions for the development and enforcement of standards for law enforcement agencies statewide including law enforcement training instructors, curricula, and specialized schools. Bello is believed to be a trainer or to provide training materials relied upon by the Tennessee Highway Patrol, including Defendant Perry and Wallace in their roles as policy-makers for the Tennessee Highway Patrol. Tennessee Highway Patrol (also referred to as "THP") is a political subdivision of the State of Tennessee, organized and existing under the laws of the State of Tennessee. Pursuant to Tennessee Code Annotated §47-4-102, each member of the THP is required to meet POST minimum standard requirements to graduate the Department of Safety Academy. Bello is sued in his official and individual capacity for misconduct occurring under color of state law.

3

14.    William "Chip" Kain ("Kain") is and/or was at the time of the incident complained of herein, the Deputy Commissioner overseeing the Tennessee Law Enforcement Training Academy/Peace Officers Standards & Training (POST) Commission and by extension, is believed to be a policy maker for the Tennessee Highway Patrol.  Kain is believed to be a trainer or to provide training materials relied upon by the Tennessee Highway Patrol, including Defendant Perry and Wallace in their roles as policy makers for the Tennessee Highway Patrol. Pursuant to Tennessee Code Annotated §47-4-102, each member of the THP has to meet POST minimum standard requirements to graduate the Department of Safety Academy. Kain is sued in his official and individual capacity for misconduct occurring under color of state law.

15.    At all times relevant herein, the acts and omissions of Defendant Perry and Wallace were pursuant to the customs, policies, practices, and/or procedures of the Tennessee Highway Patrol as its policy-makers.

16.    At all times relevant herein, the acts and omissions of Defendant Bello and Wallace were pursuant to the training provided to officers Hamlett and/or Zahn through POST and/or TLETA which was either ineffective or inferior for the THP to rely upon to ensure its officers could make effective, constitutional DUI arrests.

17.    At all times relevant herein, each Defendant acted under the color of the laws, statutes and regulations of the State of Tennessee.

18.    After the filing of Plaintiff's Complaint [Doc. 1] in this cause, Perry testified before the Tennessee House Transportation Committee defending the Tennessee Highway Patrol's sober DUI arrests and candidly admitting more training was necessary.

4

## FACTS

19.     On September 29, 2024, Plaintiff was driving in a northerly direction on Cox Road approaching Murfreesboro Road in Williamson County, Tennessee at approximately 8:30 p.m. with light rain or misty conditions.

20.     Plaintiff would show that the area in the vicinity of the intersection Cox Road and Murfreesboro Road is a rural, mostly residential area without any streetlights and was dark at 8:30 p.m. on September 29, 2024.

21.     The driving conditions which Plaintiff encountered on September 29, 2024, are depicted by the dash cam footage from one of the responding officers approaching the intersection with Murfreesboro Road from Cox Road – the direction Plaintiff was traveling - showing complete darkness except for the vehicle headlights.



22.     Plaintiff, who lived in Tullahoma, advised the investigating officers and emergency personnel that he was unfamiliar with Cox Road and had not regularly driven that route, especially after dark.

23.     Plaintiff would show that there was no visible signage posted on Cox Road approaching the intersection with Murfreesboro Road indicating that Cox Road ended in a T-

intersection nor was there a two-directional sign opposite Cox Road or a guardrail at the T-intersection as depicted in the photograph below.



24.     Plaintiff would show that prior to the roadway improvements there had been a guardrail at the T-intersection, but a guardrail had not been re-installed. Below is a Google Maps photo dated April 2023 which depicts the existence of the guardrail.



25.     Plaintiff, not realizing that Cox Road dead-ended into Murfreesboro Road in a T-intersection and the absence of any posted warning signs, continued traveling straight through

the green traffic light, hitting a ditch and coming to a stop in a field as depicted in the photograph referred to in Paragraph 18 above.

26.     Plaintiff's crash was a single-vehicle crash.

27.     Plaintiff would show that his vehicle sustained disabling damage including front airbag deployment due to the severity of the crash.

28.     Emergency personnel responded to the scene of Plaintiff's crash.

29.     Plaintiff would show that Hamlett and Zhan were among the officers and emergency personnel who responded to the crash scene.

30.     Plaintiff sustained personal injuries which required emergency medical treatment on the scene, including visible injuries to his head.

31.     The emergency personnel at the scene, including Zahn, can be heard on body cam footage discussing the absence of the guardrail at the T-intersection of Cox Road and Murfreesboro Road with Zahn commenting that the guardrail was not reinstalled because it was tiresome to replace after so many people had run through it.

32.     At all times Plaintiff maintained respectful interactions with law enforcement and emergency personnel at the scene posing no safety concerns to those present.

33.     Plaintiff repeatedly, but respectfully, advised Hamlett and Zahn that he was not driving impaired but that his crash was due to being unfamiliar with the area, especially at night without streetlights.

34.     EMS professionals, who treated Plaintiff at the crash site for his visible head injuries, did not verbalize to any the officers responding to the scene they saw signs of Plaintiff being intoxicated or otherwise under the influence of any substance.

35.     The Sheriff's deputy responding to the scene expressed that he did not find any alcohol containers or drug paraphernalia nor did Plaintiff "smell" like anything.

7

36.     The nature of the crash and the path that Plaintiff's vehicle took – which was a straight line through a green traffic light - as shown on the traffic report did not suggest impaired driving.

37.     It is medically recognized that a driver's natural "fight or flight" response from the shock and excitement of being involved in a traffic accident can cause physical and mental reactions that may mimic alcohol or drug impairment.

38.     Plaintiff avers that that he repeatedly requested that he be given a breathalyzer because he knew he was not driving under the influence but was advised that breathalyzer tests were not administered in Tennessee.

39.     Hamlett and/or Zahn wrongfully detained Plaintiff for a DUI investigation.

40.     Plaintiff avers that, based upon the totality of the circumstances, Plaintiff was unlawfully detained as no reasonable officer would continue to further detain Plaintiff after: (a) receiving Plaintiff's explanation of why and how the crash occurred; (b) Plaintiff's obvious and visible injuries to his head requiring professional medical treatment by EMS; (c) EMS not expressing that they saw signs of Plaintiff being intoxicated or otherwise impaired; (d) local law enforcement finding no alcohol containers or drug paraphernalia on the scene or smelling anything on Plaintiff to suggest drug or alcohol consumption; and (e) neither Hamlett and/or Zahn personally observing any indica of drug or alcohol consumption.

41.     A reasonable officer would have determined that Plaintiff was not impaired but was instead suffering from shock and a significant blow to his head particularly when officers knew that this intersection had been the site of frequent accidents which had occurred in the same manner as Plaintiff's crash.

42.     Plaintiff avers that Hamlett and/or Zahn lacked probable cause to continue to detain him at the crash site for a DUI investigation.

8

43.     At all times Hamlett and/or Zahn were exercising their authority under color of law as law enforcement such that Plaintiff would not believe that he would be free to leave.

44.     Hamlett and/or Zahn improperly extended their response at the scene to force Plaintiff to submit to field sobriety tests by intentionally or recklessly disregarding EMS statements that Plaintiff had struck his head causing an obvious head injury and the lack of any indication that they suspected Plaintiff being intoxicated or under the influence, and refusing to take into account that Plaintiff suffered from shock and/or his significant head injuries might affect his balance or coordination.

45.     Plaintiff, despite his injuries, willingly complied with the field sobriety tests because he knew, and had repeatedly verbalized to Hamlett and Zahn, that he had not consumed any alcohol, any intoxicants, and did not take any prescription medications prior to his accident which would have impaired his ability to safely operate his vehicle.

46.     Hamlett and/or Zahn conducted field sobriety tests to evaluate Plaintiff which consisted of: (1) a Horizontal Gaze Nystagmus Test; (2) a Walk and Turn Test; and (3) a Straight Leg Raise test despite Plaintiff receiving medical treatment for head injuries at the scene of a severe crash.

47.     Plaintiff asserts that he successfully completed all of the field sobriety tests without any difficulty following Hamlett and/or Zahn's instructions.

48.     These officers went off-mission from keeping the roads safe by continuing to prolong Plaintiff's detention following the successful completion of the field sobriety tests.

49.     Hamlett and/or Zahn placed Plaintiff under arrest and charged Plaintiff with driving under the influence despite successfully completing the field sobriety tests.

50.     Plaintiff was completely confused when he was instructed to turn around during the field sobriety tests – which he did – and the officer took hold of his wrist. Plaintiff can be

9

heard on body cam footage asking "what is going on?" expressing his complete lack of understanding about why he was being handcuffed.

51.    In response to Plaintiff asking why he was being arrested after having successfully completed the field sobriety tests, Plaintiff was only informed that he drove through an intersection where there was no road so "you know how it looks" despite these officers' personal knowledge that the crash location had frequent accidents which occurred in the same manner as Plaintiff's crash.

52.    To lawfully arrest Plaintiff, Hamlett and/or Zahn must have probable cause of criminal activity.

53.    Probable cause exists where "the facts and circumstances within the officer's knowledge [ ] are sufficient to warrant a prudent person .. .in believing . . . that the suspect committed, is committing, or is about to commit an offense." Barrera v. City of Mount Pleasant, 12 F.4th 617, 620 (6th Cir. 2021) (quoting Michigan v. Defillippo 443 U.S. 31, 37 (1979)).

54.    The undisputed facts will show that Plaintiff was involved in a single-car accident on a dark, unlit road causing him severe head injuries.

55.    Plaintiff complied and passed the field sobriety tests administered by Hamlett and/or Zahn.

56.    Despite the completion of these tests and their knowledge that this dangerous intersection had caused wrecks similar to Plaintiff's, Plaintiff was arrested for driving under the influence in violation of *Tennessee Code Annotated* §55-10-401 and his Fourth Amendment rights.

57.    Plaintiff would show that body cam footage shows the officers obtaining the implied consent form to notify Plaintiff that he was being charged with DUI prior to even administering the first field sobriety test.

10

58.     Additionally, Plaintiff would show that as soon as the Zahn arrived on the scene –
even before laying eyes on Plaintiff - he had decided that he was going to arrest Plaintiff for DUI
based upon body cam footage in which Zahn can be heard commenting that he "would bet
money" Plaintiff was under the influence despite Zahn's intentionally attempt to interfere with
the audio; the response of a local sheriff's deputy that "he [Plaintiff] seems pretty energetic;"
additional discussions between Zahn and the sheriff's deputy was inquiring what Zahn thought
Plaintiff was "on" and if he thought it was "marijuana mixed with something?" to which Zahn
replied that "he [Plaintiff] is doing something" . . .  "I'm guessing he was on cocaine or some
upper."

59.     Additionally, Zahn can be heard on body cam footage telling Hamlett "as soon as
he [Plaintiff] gets out of the ambulance we are going to do field sobriety tests" again without
either officer having seen or spoken with Plaintiff or any of the emergency personnel on the
scene, including EMTs.

60.     During all times during this police/citizen encounter the Plaintiff was respectful,
restrained, courteous, and compliant posing no safety threat.

61.     At no time did either Hamlett and/or Zahn observe, or claim to have observed,
Plaintiff engaging in any conduct which would cause a reasonable law enforcement officer to
suspect Plaintiff was driving under the influence of alcohol or any intoxicant or otherwise
engaging in unlawful behavior.

62.     Plaintiff was placed in the back of the patrol car visibly upset and handcuffed.

63.     Hamlett and/or Zahn did not mirandize Plaintiff prior to transporting him to the
hospital for a blood test.

64.     Plaintiff had visible injuries from the handcuffs once they were removed at
hospital.

65. Plaintiff asked Hamlett and/or Zahn at the hospital if he needed to sign a form acknowledging his Miranda rights.

66. At the time of his arrest, Plaintiff had neither committed a crime nor violated any other statute or regulation.

67. Hamlett and/or Zahn lacked probable cause to arrest Plaintiff and did not have a warrant to obtain Plaintiff's blood.

68. The undisputed fact is that Plaintiff was, in fact, sober as established by the blood test subsequently administered without a search warrant or sufficient probable cause and as he continually represented to Hamlett and Zahn.

69. Plaintiff affirmatively states that he had no prior criminal record on September 29, 2024.

70. Officers Hamlett and/or Zahn had no valid legal basis to arrest Plaintiff.

71. On December 2, 2024, a *Nolle Prosequi* Judgment was entered by the Judge of the General Sessions Court of Williamson County, Tennessee #24-CR-4506.

72. Hamlett and/or Zahn while acting under the color of the law violated Plaintiff's constitutional rights by wrongfully detaining Plaintiff for a DUI investigation and then unlawfully seizing Plaintiff, arresting Plaintiff for DUI, despite Plaintiff's obvious sobriety.

73. Defendants Perry, Wallace, Bello, Kain separately or collectively are responsible for the training and oversight of THP officers, including Hamlett and Zahn.

74. Although Bello and Kain do not fall within the THP, they are responsible for the training which is provided to officers through TLETA and POST which is believed to be used and/or relied upon by Perry and/or Wallace to ensure THP officers are equipped to make DUI arrests using only discretionary methods.

12

## DEPRIVATION OF FEDERAL RIGHTS UNDER 42 U.S.C. §1983

All of the relevant acts of Defendants, their agents, servants, and employees, were carried out under the color of state law and in their official capacities.

The Defendants acts deprived Plaintiff of the rights, privileges and immunities guaranteed to citizens of the United States by the U.S. Constitution and in violation of 42 U.S.C. §1983.

### FIRST COUNT
### Unlawful Seizure

75.     Hamlett and/or Zahn violated Plaintiff's rights by unlawfully detaining Plaintiff and requiring Plaintiff to perform field sobriety tests without reasonable suspicion or probable cause to believe that Plaintiff was driving under the influence.

76.     No reasonable person would have thought that they were free to leave the scene of the accident given the interactions between Plaintiff and Defendants Hamlett and Zahn.

77.     The seizure of Plaintiff for driving under the influence was unreasonable because Hamlett and Zahn lacked probable cause to detain Plaintiff based upon the totality of the circumstances: (a) EMTs treated Plaintiff for head injuries; (b) EMTs did not express any concerns to law enforcement that they observed any signs that Plaintiff may be under the influence of drugs or alcohol; (c) deputies on the scene did not locate alcohol containers or drug paraphernalia; (d) Plaintiff did not "smell" like anything; (e) Plaintiff did not exhibit any of the common signs of intoxication – impaired/slurred speech, stumbling, aggressive or overly friendliness, drowsiness or loss of consciousness, difficulty concentrating, flushed face, or vomiting. Additionally, Plaintiff successfully communicated with professionals at the scene in a logical, coherent manner and was consistent and honest in his description of the events leading up the accident despite verbalizing his embarrassment and remorse.

13

78.     The illegal seizure of Plaintiff's person by Hamlett and/or Zahn to force Plaintiff to submit to field sobriety tests was done without probable cause depriving Plaintiff of his civil rights to be free from unlawful seizures under the Fourth and Fourteenth Amendments.

79.     Following the successful completion of the field sobriety tests, Plaintiff was seized and wrongfully arrested without probable cause for driving under the influence.

80.     Plaintiff was placed in the patrol car and taken to the hospital where Plaintiff was forced to submit to submit to a blood alcohol test.

81.     Plaintiff tested negative for all substances tested proving his representation to Hamlett and/or Zahn to be true that Plaintiff's crash was simply an accident and not due to impaired driving.

82.     Plaintiff, who had not been advised of his Miranda rights, asked about those rights at the hospital and remained under the impression he would be free to leave once his negative blood tests were presented to Hamlett and/or Zahn.

83.     Sadly, this was not the case, Plaintiff was arrested and wrongfully charged with DUI.

84.     Plaintiff suffered damages associated with his arrest including but not limited to lost wages, legal fees, and towing expenses.

85.     The Defendants Hamlett and/or Zahn acted intentionally, maliciously, or with callous disregard for Plaintiff's rights.

86.     As a direct and proximate result of the acts and omissions of Hamlett and/or Zahn, Plaintiff suffered a violation of his constitutional rights, harm to his reputation and standing in the community, mental distress, shame, humiliation, and embarrassment, and was therefore damaged in an amount to be determined by a jury.

14

87.     Plaintiff avers that the actions and omissions of Hamlett and/or Zahn were the direct and proximate result of the inferior training provided and/or relied upon and/or the limited or absent oversight of THP officers by Defendants Perry and Wallace which caused Plaintiff to suffer a violation of his constitutional rights, harm to his reputation and standing in the community, mental distress, shame, humiliation, and embarrassment, for which Plaintiff seeks injunctive relief to ensure that the DUI culture within the THP is addressed through proper training, oversight, and use of objective tools through policies, directives, or initiatives to prevent sober DUI arrests such as Plaintiff's.

88.     As a direct and proximate result of the inferior training provided by Defendants Bello and Kirk, Plaintiff suffered a violation of his constitutional rights, harm to his reputation and standing in the community, mental distress, shame, humiliation, and embarrassment, for which Plaintiff seeks injunctive relief to ensure that proper training, including the use of objective tools, to equip THP officers with requisite discernment to assess DUI and avoid false arrests such as the type Plaintiff suffered.

89.     Plaintiff is a resident of this state and suffers a substantial risk of harm of being put through the process repeatedly absent substantial reform on the part of the Defendants.

SECOND COUNT
False Arrest And Illegal Search

90.     Hamlett and/or Zahn violated the Plaintiff's rights by placing him under arrest without probable cause to believe that he was driving under the influence following the successful completion of the three (3) subjective field sobriety tests.

91.     A reasonable officer would have determined that there was no probable cause to arrest Plaintiff for driving under the influence under the totality of the circumstances.

15

92.     Hamlett and/or Zahn subsequently placing Plaintiff under arrest for driving under the influence was not for any lawful purpose, lacked probable cause, and not based on the totality of the circumstances.

93.     These actions were a physical restraint, a show of authority under color of law, and a show of force.

94.     The false arrest of Plaintiff was a deprivation of his civil rights to be free from arrest without necessary probable cause under the Fourth Amendment.

95.     Based upon the arrest made without sufficient probable cause, Hamlett and/or Zahn undertook a warrantless search of Plaintiff's person without probable cause or consent by forcing Plaintiff to submit to a blood test.

96.     Plaintiff would show that, contrary to the statements made by Defendants to Plaintiff at the scene, Tennessee does provide for the use of breathalyzer tests and *Tennessee Code Annotated* §55-10-406 sets out specific circumstances for requiring blood or oral fluid tests.

97.     Plaintiff avers that among the circumstances specified in the statute allowing for a blood test is the driver's consent.

98.     Plaintiff would show that Zahn and Hamlett obtained Plaintiff's "consent" by coercion and duress.

99.     Plaintiff was advised that he had no other option but to submit to a blood test and was put in a position where he had no choice but to submit to the test to prove his innocence - in direct opposition to the "innocent until proven guilty" standard.

100.    The illegal search of Plaintiff's person was a deprivation of his civil rights to be free from unlawful searches under the Fourth Amendment.

16

101.     A reasonable, well-trained, officer would know that there were no specific or articulable facts to justify arresting Plaintiff for DUI under the totality of the circumstances.

102.     A reasonable person in Plaintiff's position would not have felt free to leave.

103.     Plaintiff, nor any reasonable person, would have felt free to refuse the blood test based upon the pressure from Zahn and Hamlett and the misleading information being provided to him.

104.     With respect to this show of authority by Hamlett and Zahn, Plaintiff submitted without protest and presented no safety threat to them.

105.     The seizure was made without probable cause and without legal process.

106.     Plaintiff was transported to provide a blood sample without a warrant or probable cause and based upon "consent" which was coerced and made under duress.

107.     The collection and analysis of a blood sample is a "search" within the meaning of the Fourth Amendment. See Skinner v. Ry. Labor Execs. Ass'n, 489 U.S. 602, 618 (1989).

108.     A search is unlawful if it is made without probable cause.

109.     Hamlett and Zahn, without reasonable suspicion or probable cause, intimidated the Plaintiff into providing a blood sample by advising him that there was no alternative and allowing Plaintiff to believe that he would be free to go once the test confirmed his sobriety.

110.     As a result of these actions, Plaintiff suffered actual monetary damages as well as emotional distress, emotional upset, embarrassment, and damage to his reputation.

111.     Hamlett and Zahn were the cause in fact and proximate cause of Plaintiff's damages.

112.     Hamlett and Zahn acted intentionally, maliciously, or with callous disregard for Plaintiff's rights.

113.     Upon information and belief, the actions of Hamlett and Zahn to administer subjective field sobriety tests to justify a pre-determined decision to arrest Plaintiff on charges of DUI and to coerce Plaintiff to "consent" to a blood test by advising him that Tennessee did not "do breathalyzer tests", were either (a) a part of the training provided by Bello and Kain through TLETA and/or POST; (b) part of the training provided by Perry and/or Wallace through the probationary period for THP officers; or (c) implicitly authorized, approved, or knowingly acquiesced by Bello, Kain, Wallace, and/or Perry as acceptable THP culture as evidenced by no defense being raised that Hamlett or Zahn had acted outside the scope of their employment.

114.     Defendants Perry and/or Wallace were the proximate cause of Plaintiff's damages by not adequately training and/or by not overseeing or appropriately disciplining Defendants Hamlett and Zahn.

THIRD COUNT
State Law Claims of False Imprisonment

115.     Hamlett and Zahn falsely imprisoned Plaintiff and violated his rights by seizing his person and depriving him of his liberty without probably cause to believe that he had committed a crime, namely driving under the influence.

116.      The false imprisonment was a deprivation of Plaintiff's liberty without the requisite due process of law as defined under the Fourteenth Amendment and in violation of Tennessee State law.

117.     As a direct and proximate result of the acts and omissions of Hamlett and Zahn, Plaintiff suffered a seizure of his person, a violation of his constitutional rights, harm to his reputation and standing in the community, mental distress, shame, humiliation, and embarrassment, and was therefore damaged in an amount to be determined by a jury.

118.    Defendants Perry and/or Wallace were the proximate cause of Plaintiff's damages by not adequately training and/or by not overseeing Defendants Hamlett and Zahn's DUI arrests.

119.    Defendants Perry and/or Wallace permitted, facilitated, encouraged or allowed a culture of wrongful and illegal DUI arrests to develop within the THP that any problems with an arrest would be handled in court.

120.    Plaintiff seeks injunctive relief against Defendants Perry and/or Wallace to ensure that proper policy, training, and initiatives are instituted to ensure the proclivity for false DUI arrests within the THP ends.

121.    Plaintiff seeks injunctive relief against Defendants Bello and Kain to ensure that proper policy, training, and initiatives are instituted to ensure that POST and TLETA standards are improved so false DUI arrests within the THP end.

FOURTH COUNT
Culpability of the THP

122.    On information and belief, the policy-makers for the Tennessee Highway Patrol including Defendants Perry and/or Wallace have developed a custom and culture of violating the constitutional rights of others or acquiescing such violations. The paragraphs set forth above characterize and describe the actions of Hamlett, Zahn and other troopers during DUI arrests of drivers ultimately found to be sober.

123.    The typical pattern which has been allowed to develop within the THP is that drivers stopped for traffic violations are told by the trooper that they are believed to be under the influence of alcohol and/or drugs, given subjective field sobriety tests which the trooper either improperly administer due to a lack of proper training or subjectively interpret as "failed" to justify an arrest only for the driver to be taken to jail and later vindicated by a blood test which showed negative for drugs and/or alcohol.

19

124.    This pattern has been widely reported in an investigation performed by WSMV4 investigation available online at https://www.wsmv.com/news/investigate/ (last accessed February 12, 2026).

125.    The Tennessee Highway Patrol is the state police responsible for the enforcement of traffic laws.

126.    Perry, the Colonel of the Tennessee Highway Patrol, commands the statewide patrol, sets operational strategy, and is charged with the responsibility of ensuring high-level training standards.

127.    Wallace, Bello and Kain are believed to be responsible for implementing the training standards used and/or relied upon by the THP – Bello and Kain for the training provided through TLETA and POST and Wallace for the additional on-the-job probationary training after employment with the THP.

128.    Upon information and belief, the THP has a formal policy that troopers are not considered to have successfully completed probationary training until they have made a DUI arrest.

129.    Upon information and belief, troopers have been advised they should make at least one hundred (100) DUI arrests per year.

130.    Upon information and belief, THP rewards and/or recognizes officers based upon the number of DUI arrests made.

131.    Upon information and belief, THP receives financial gain based upon the number of DUI arrests from fees, seizures, and forfeitures, as well as contributions from organizations such as M.A.D.D.

132.    Upon information and belief, individual troopers, including Hamlett and Zahn, benefit financially from "premium" overtime as a direct result of making DUI arrests.

20

133.    Upon information and belief, monetary remuneration is a driving motivation behind the policy.

134.    Even if not reduced to a written policy, this custom of making an excessive number of arrests on charges of DUI is so widespread as to have the force of law and until the new legislation adopted *Tennessee Code Annotated* §55-10-428 the number of sober DUI arrests was ignored by the policy makers responsible for officer training – including Perry, Wallace, Bello and Kain.

135.    Perry, Wallace, Bello and Kain each have developed a history of wrongfully tolerating, condoning, acquiescing, or alternatively authorizing, approving, or encouraging, constitutional violations.

136.    Perry, Wallace, Bello and Kain each had actual knowledge that officers, including Zahn, have made multiple arrests for DUI when in fact the drivers were completely sober and not under the influence of any intoxicants.

137.    Zahn, and the THP as a whole, have wrongfully arrested numerous sober persons on charges of DUI, including, besides Plaintiff, a former U.S. Attorney; a NASA employee; and a driver on the Autism spectrum.

138.    As a result, it has become the custom and culture of the Defendants Perry, Wallace, Bello and Kain to protect officers when officers are known to have violated the constitutional rights of others.

139.    The Defendants, specifically Perry and Wallace, have failed to properly supervise officers during the probationary field training period on reasonable suspicion resulting in numerous wrongful arrests and violations of the constitutional rights of the citizens, including Plaintiff.

140.     The Defendants, specifically Perry and Wallace, have willfully failed and/or ignored the lack of proper training of officers during the probationary field training period on reasonable suspicion resulting in numerous wrongful arrests and violations of the constitutional rights of the citizens, including Plaintiff.

141.     Plaintiff would show that training provided to obtain POST certification is a minimum requirement and the Tennessee Highway Patrol has a formal written policy which requires additional field training in which probationary employees work alongside Field Training Trooper who provide on-the-job training.

142.     The Defendants, specifically Perry and Wallace, had actual knowledge of which officers were making arrests based on charges of DUI and the drivers are later determined to be completely sober.

143.     Plaintiff avers that the Tennessee Highway Patrol internally tracks these statistics.

144.     Upon information and belief, Plaintiff avers that the Defendants, specifically Perry and Wallace, also have access to additional statistics regarding the disposition of arrests made for driving under the influence, including blood test results, through third-party court monitoring programs.

145.     Plaintiff avers that by Perry and Wallace continuing to allow officers who they have actual knowledge have made improper arrests to train, supervise, and/or serve as Field Training Troopers to other officers, especially officers who are inexperienced or considered probationary, on how to conduct accident investigations and administer field sobriety tests, demonstrates a deliberate indifference which perpetuates additional wrongful arrests, constitutional violations, and wrongfully charging citizens with criminal offenses they did not commit.

146.    Perry and Wallace failed to properly supervise officers who are responsible for training and/or supervising officers during the probationary period after completing P.O.S.T. certification on reasonable suspicion resulting in numerous wrongful arrests and violations of the constitutional rights of the citizens, including Plaintiff.

147.    Perry and Wallace have failed to properly discipline officers who make arrests on charges of DUI who tests conclusively demonstrate no violations of Tennessee DUI laws have occurred resulting in violations of the constitutional rights of the citizens of Tennessee occur.

148.    Upon information and belief, Perry and Wallace acted with deliberate indifference to a pattern of past occurrences of constitutional violations of citizens such as Plaintiff of which they had actual knowledge such that officers and deputies feel empowered to violate the constitutional rights of U.S. citizens with impunity.

149.    Plaintiff avers that the pattern of indifference by Perry and Wallace has become so egregious that Tennessee Legislature has adopted *Tennessee Code Annotated* §55-10-428 establishing an advisory task force for the purpose of reviewing the impaired driving and submit annual reports regarding its findings and recommendations.

150.    Plaintiff further avers that the pattern of indifference by Perry and Wallace has become so egregious that Tennessee Legislature has also adopted *Tennessee Code Annotated* §55-10-429 requiring annual reports to increase transparency on the number or wrongful DUI arrests and the agencies responsible.

151.    Perry testified before the Tennessee Senate Transportation and Safety Committee on or around January 21, 2026, that THP is reviewing its training and developing a system to properly review every DUI case.

152.     In the 2017 press release announcing Perry becoming Colonel for the THP, it was noted that Perry "supervised the top DUI producing trooper in the THP in 2012 and 2013." The use of the word "producing" infers that there were incentives for making DUI arrests.

153.     Perry, Wallace, Bello, and Kain, individually and/or in collaboration with one another through the training each was responsible for providing, failed to properly train officers on investigating the offense of Driving Under the Influence.

154.     Perry and Wallace aided and abetted loose policies and procedures with no supervision, investigation or accountability resulting in a trooper like Zahn or Hamlett requiring Plaintiff to submit to subjective field sobriety tests even though local law enforcement and treating EMS had no suspicion of drug or alcohol use.

155.     Perry and Wallace did not put in place checks, balances or controls to determine if troopers including Hamlett and Zahn were abusing their authority or negligently administering field sobriety tests at traffic stops.

156.     Upon information and belief, no investigation was carried out to determine if the DUI arrests were legitimate until WSMV4 reported the unfair, unjust, sober DUI arrests made by the THP. See https://www.wsmv.com/news/investigate/ (last accessed February 12, 2026)

157.     Perry, Wallace, Bello, and Kain, individually and/or in collaboration with one another, failed to properly train officers on the proper means for evaluating whether a citizen is driving while under the influence of a drug or intoxicant and/or monitored troopers to keep troopers from abusing civilians such as Plaintiff by violating their constitutional rights.

158.     Plaintiff would further show that the THP has fired at least two officers for what was characterized as a "failure to properly investigate" when those officers determined that field sobriety tests were not necessary in contradiction to the policy, practice, and custom created

24

within the Tennessee Highway Patrol which encourages, rewards and/or incentivizes DUI arrests.

159.    As a result of Defendants' actions as described above, Plaintiff seeks injunctive relief restraining the Defendants individually and collectively in the future from committing or perpetrating such unconstitutional actions.

160.    Plaintiff also seeks an Order compelling Defendants to develop policies with checks and balances to address the practices that have necessitated this Complaint.

161.    Plaintiff avers that he is entitled to prospective and injunctive relief to avoid future violations of his constitutional rights by these Defendants.

162.    Plaintiff avers that, like all able-bodied residents of Tennessee, he is required by necessity due to the lack of a state-wide mass transit system to operate a motor vehicle on state highways and roadways which will be patrolled by the Tennessee Highway Patrol, including Cox Road and/or Murfreesboro Road where the events forming the basis of this Complaint occurred.

163.    Plaintiff further avers that Middle Tennessee, where the events complained of herein occurred, is home to some of the fastest growing cities in Tennessee – including Nashville, Lebanon, and Nolensville – resulting in an increased number of residents who will not be familiar with the roads leading to potential traffic violations.

164.    Plaintiff avers that requiring all of the Defendants to revise or adopt policies, including training curricula and procedures, for officers on the use of breathalyzers, and requiring the use of breathalyzers as provided in *T.C.A.* §55-10-406, when reasonable suspicion exists that a driver may be operating a vehicle while impaired will reduce if not prevent the likelihood of Plaintiff and other persons operating motor vehicles on the roadways within Tennessee from having their Constitutional rights violated.

25

165.    Plaintiff avers that the Defendants, individually and collectively, will continue to violate the Constitutional Rights of the citizens by wrongfully arresting sober drivers on charges of DUI without probable cause absent injunctive relief.

166.    Plaintiff avers that the Defendants, individually and collectively, will continue to perpetuate the violations of the constitutional rights of the citizens absent prospective relief requiring Tennessee Highway Patrol officers to be properly trained on the legal requirements of reasonable suspicion.

167.    Plaintiff avers that the Defendants, individually and collectively, will continue to perpetuate the violations of the Constitutional Rights of the citizens of Tennessee including Plaintiff absent prospective relief requiring Tennessee Highway Patrol officers to be properly trained on the legal requirements of probable cause.

168.    Plaintiff avers that the Defendants, individually and collectively, will continue to perpetuate the violations of the Constitutional Rights of the citizens including Plaintiff absent prospective relief requiring Tennessee Highway Patrol officers to be properly trained on conducting field sobriety tests and evaluating the results to avoid improper arrests of sober drivers.

169.    Plaintiff avers that the Defendants, individually and collectively, will continue to perpetuate the violations of the Constitutional Rights of the citizens including Plaintiff absent prospective relief requiring Tennessee Highway Patrol policy-makers revise existing policies or to adopt new policies which eliminate incentives for officers based upon the number of arrests made on charges of DUI, including discipling and/or terminating officers who decline to conduct field sobriety tests following motor vehicle accidents.

170.    Plaintiff avers that the Defendants Perry and/or Wallace will continue to perpetuate the violations of the Constitutional Rights of the citizens of Tennessee including

Plaintiff absent prospective relief requiring revision of existing training curriculum or to adopt new training and proficiency measures to ensure that officers are knowledgeable of the legal requirements to establish reasonable suspicion to detain a motorist for suspected DUI.

171.    Plaintiff avers that the Perry and Wallace will continue to perpetuate the violations of the Constitutional Rights of the citizens of Tennessee including Plaintiff absent prospective relief requiring revision of existing training curriculum or to adopt new training and proficiency measures to ensure that officers are knowledgeable of the legal requirements to establish probable cause to conduct field sobriety tests.

172.    Plaintiff avers that the Defendants Perry and Wallace will continue to perpetuate the violations of the Constitutional Rights of the citizens of Tennessee including Plaintiff absent prospective relief requiring revision of existing training curriculum or to adopt new training and proficiency measures to ensure that officers are knowledgeable of how to conduct field sobriety tests.

173.    Plaintiff avers that the Defendants Perry and Wallace continue to perpetuate the violations of the Constitutional Rights of the citizens of Tennessee including Plaintiff absent prospective relief requiring revision of existing training curriculum or to adopt new training and proficiency measures to ensure that officers are knowledgeable of how to evaluate the results of properly conducted field sobriety tests to avoid wrongful arrests of sober drivers.

174.    Plaintiff avers that Perry and Wallace will continue to perpetuate the violations of the Constitutional Rights of the citizens of Tennessee including Plaintiff absent prospective relief requiring revision of existing training curriculum or to adopt new training and proficiency measures to ensure that officers are knowledgeable of how to evaluate the results of field sobriety tests.

27

175.     Plaintiff and citizens in similar circumstances will suffer harm unless the Court issues the injunctive relief requested by Plaintiff.

176.     Beyond the injunctive relief requested, Plaintiff also request any relief that the law may allow and for any other relief that the Court deems proper.

FIFTH COUNT
Tennessee State Law Claims for Assault, Battery and Negligence

177.     Plaintiff asserts violations of Tennessee state law by Defendants under *Tennessee Code Annotated* §39-13-101, et seq. (assault and battery) and *Tennessee Code Annotated* §39-11-620 (requiring the use of reasonable force in effecting a lawful arrest).

178.     The acts or omissions of the Defendants requiring a blood draw without probable cause that Plaintiff was driving impaired deprived Plaintiff of his rights under Tennessee state law and caused him the injuries and damages described herein.

179.     The acts or omissions of the Defendants requiring a blood draw without probable cause that Plaintiff was driving impaired deprived Plaintiff of his rights under Tennessee state law to be free from an unreasonable use of force and caused him the injuries and damages described herein.

180.     Plaintiff further avers that coercing his "consent" to a blood draw while under duress invalidates the consent and results in an excessive use of force and/or assault and battery upon the Plaintiff.

DAMAGES

181.     Defendants are liable to the Plaintiff, jointly and severally, for all wrongful acts which harmed and caused damage to him.

182.     Defendants are liable to the Plaintiff for damages for violations of his civil rights under the Constitution of the United States as defined by 42 U.S.C. §1983.

28

183.     Based on the facts and circumstances described in this Complaint, and as a direct result of the acts and omissions of the Defendants as described herein, Plaintiff has suffered damage to reputation; pain and suffering; past, present, and future emotional distress; and other financial and economic losses.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests a trial by a JURY and that a judgment been entered against Defendants, jointly and severally, as follows:

1.     Compensatory damages of at least One Million Dollars ($1,000,000.00) or such other amount supported by the evidence at trial;

2.     Punitive damages in an amount to sufficiently deter Defendants from engaging in future behavior as described in this Complaint;

3.     Attorneys' fees and costs of suit as provided by 42 U.S.C. §1988;

4.     Prospective and Injunctive relief to prevent future violations of Plaintiff's Constitutional civil rights and the rights of other citizens operating motor vehicles on Tennessee state roadways.

5.     Pre- and post-judgment interest at the legal rate; and

6.     Any and all other and further relief as the Court deems appropriate.

Respectfully submitted,
HUNTER K. LUNDGREEN, Plaintiff
by his attorneys,


CHANCEY-KANAVOS

BY:     /s/ H. Franklin Chancey
        H. FRANKLIN CHANCEY, BPR #013187
        P.O. Box 42
        Cleveland, TN 37364
        (423) 479-9186
        franklin@cklplaw.com

29

30